Sharon A. PRIMUS

v.

Richard C. GALGANO, and Brighton Marine Health Center, Inc.

No. CIV.A. 9810549RGS.

United States District Court, D. Massachusetts.

March 8, 2002.

Rosario M.F. Rizzo, Concord, MA, Robert F. Oberkoetter, South Dartmouth, MA, for Plaintiffs.

Wilson D. Rogers, Wilson D. Rogers, Wilson D. Rogers, III, Wilson D. Rogers, Jr., PC, Boston, MA, Mary Elizabeth Carmody, United States Attorney's Office, Donohue Federal Building and Courthouse, Worcester, MA, for Defendants.

## MEMORANDUM AND ORDER ON DEFENDANT RICHARD GALGANO'S MOTION FOR ENTRY OF JUDGMENT IN ACCORDANCE WITH M.G.L. c. 231, § 60H [Docket # 61]

STEARNS, District Judge.

In this medical malpractice case alleging a failure to diagnose breast cancer, the jury awarded plaintiff Sharon Primus $1,460,000 in compensatory damages, consisting of a $500,000 award for past pain and suffering and a $960,000 award for future pain and suffering. The defendant, Dr. Richard Galgano, now moves that the award be reduced to $500,000, to conform to the cap on pain and suffering damages imposed by M.G.L. c. 231, § 60H.

In 1986, alarmed by the spiraling costs of medical malpractice insurance, the Massachusetts Legislature enacted several laws limiting recoveries by malpractice plaintiffs. Among them was section 60H. It reads in relevant part:

In any action for malpractice, negligence, error, omission, mistake or the unauthorized rendering of professional services, other than actions brought under section two of chapter two hundred and twenty-nine, against a provider of

health care, the court shall instruct the jury that in the event they find the defendant liable, they shall not award the plaintiff more than five hundred thousand dollars for pain and suffering, loss of companionship, embarrassment and other items of general damages unless the jury determines that there is a substantial or permanent loss of impairment of a bodily function or substantial disfigurement, or other special circumstances in the case which warrant a finding that imposition of such a limitation would deprive the plaintiff of just compensation for the injuries sustained.

In this case, the only damages sought by plaintiff were for pain and suffering. The court did not, however, instruct the jury regarding the section 60H "cap" on damages, nor did the court require that the jury find permanent disablement, substantial disfigurement or special circumstances as a precondition to an award in excess of $500,000.

Prior to final argument, the court provided counsel with draft copies of the proposed verdict slip and jury instructions. In the ensuing discussion, plaintiff's counsel asked for changes in the wording of question 1 (involving the duty of care), which the court accommodated.[1] Defendant's counsel objected to the segregation of damages into past and future amounts as "prejudicial." The court disagreed and pointed out that the verdict slip had been structured in this regard to conform with the requirements of section 60H. The court also reminded counsel of the $500,000 statutory cap and the fact that it had received no request for instructions or findings on the issue.[2] Defendant's counsel offered no

response and moved on to "housekeeping matters."

Subsequent to the verdict, defendant moved for the entry of judgment "in accordance" with section 60H, requesting that the court reduce the verdict by $960,000. Defendant argues that while he did not request a section 60H instruction, the statutory limitation on damages is "an operation of law and was not waived by the defendant."

I disagree for three reasons. The limitation was enacted to benefit defendants in medical malpractice actions. *See* Note, *The Constitutionality of the Massachusetts Medical Malpractice Pain and Suffering Cap*, 29 B.C. L.Rev. 659 (1988) (questioning the extent of a medical malpractice "crisis" and the constitutionality of section 60H). Thus, it seems appropriate that the burden of requesting an instruction be placed on the defendant. Here, no request was made despite the court's reminder to counsel.

Second, I agree with the substance of the affidavits filed on plaintiff's behalf by Michael E. Mone, Esq., and Elizabeth N. Mulvey, Esq., both of whom I know to be lawyers experienced in the trial of medical malpractice actions. Attorney Mone states in his affidavit:

Since the enactment of 231, Section 60(H), I have tried many malpractice cases in which the $500,000 cap might have been applicable. In none of those cases has a judge charged on the $500,000 cap and in fact when a defense lawyer has been questioned about it on occasions by a trial judge, they have asked that the judge not charge on the

---

1. The court also adopted several changes suggested by plaintiff's counsel in the wording of the instructions.

2. The court did say that the evidence seemed not to support a finding of permanent disability, although it did not comment on the substantial disfigurement prong of the statute.

cap and have, in essence, waived its application.

I strongly believe that the failure of the defendants in this case to request a charge on the cap is consistent with the practice in the defense bar to avoid any mention of the cap because that would give the plaintiff's attorney an opportunity to argue a figure, $500,000, which otherwise would not be permissible under Massachusetts practice and procedure with regard to permissible jury argument on general damages.

I frequently speak with other plaintiff's lawyers who try medical malpractice cases and the subject of the cap has arisen and I believe that the lawyers in the medical malpractice defense bar make a conscious decision to not ask for the cap because of the requirement that the court "shall instruct" the jury regarding the cap and its exceptions. It has been expressed to me that the reason for this is that the medical profession sought "a ceiling and got a floor."

In similar vein, Ms. Mulvey attests in her affidavit:

Since the enactment of M.G.L. c. 231 § 60H in 1986, I have tried more than 75 medical malpractice cases in which the $500,000 cap might have been applicable. I can recall only one case in which a trial judge charged the jury on the $500,000 cap, and it was over the strenuous objection of the attorney for the defendant doctor. There have been numerous other cases where the trial judge has intended to charge on the cap, only to be dissuaded by the objections of defense counsel. Defense counsel have consistently taken the position (often on the record) that they do not wish the jury to learn of the cap because they are afraid that the jury will interpret the accompanying instructions to require an award of *at least* $500,000 in the case of

a serious injury. The lawyers therefore fear that the instructions regarding the applicability of the cap might *increase* rather than limit the amount of damages awarded by a jury.

Even where trial judges have initially taken the view that M.G.L. c. 231 § 60H mandates a charge on the cap, defense lawyers have successfully resisted the instruction by arguing that they are in essence declining to dispute the existence of the factual predicate for waiver of the cap, i.e., a determination by the jury "that there is a substantial or permanent loss or impairment of a bodily function or substantial disfigurement, or other special circumstances in the case which warrant a finding that imposition of such a limitation would deprive the plaintiff of just compensation for the injuries sustained."

In giving weight to these attorneys' affidavits, I rely not only on their reputation and experience, but also on my own experience as a trial judge, both in the federal district court and as a Justice of the Massachusetts Superior Court. In the twenty or more medical malpractice cases over which I have presided, I can recall no instance in which a defendant's counsel asked for the section 60H instruction, and for the reasons that Attorneys Mone and Mulvey state.

Third, I am satisfied that there was sufficient, indeed compelling evidence that Ms. Primus suffered a "substantial disfigurement." Without delving into unnecessary detail, Ms. Primus testified to having undergone a radical mastectomy involving the virtual removal of her right breast, and a largely unsuccessful post-operative attempt at breast reconstruction. I am confident that any reasonable jury would regard the loss of a woman's breast as a subjective and objective disfigurement of a substantial nature.

## ORDER

For the foregoing reasons, the motion for Entry of Judgment in Accordance with M.G.L. c. 231, § 60H is *DENIED*.

SO ORDERED.